UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ABDUL ABDULLAH,
   Plaintiff,

v.    C.A. No. 14-131S

EVOLVE BANK & TRUST, JOHN DOE
CORPORATIONS, 1 through 10,
inclusive, and JOHN PONTE,
   Defendants.

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

  The ability of federal litigants to rely on the finality of settlements achieved through court-annexed mediation is raised by this motion for attorneys' fees and costs. It requires this Court to address what consequences should be imposed on a party who participates in court-ordered mediation and then, in bad faith, intentionally reneges on promises made in the presence of the Court and memorialized in an electronically-signed communication to the Court, causing the other parties to the agreement to incur additional expenses. Plaintiff Abdul Abdullah ("Mr. Abdullah") and Defendant Evolve Bank & Trust ("Evolve") initiated this proceeding with their motions to enforce the settlement agreement (ECF Nos. 21 and 27). They sought to compel Defendant John Ponte ("Mr. Ponte") to comply with his promise to execute the settlement documents and to authorize his attorney to pay over Mr. Ponte's financial contribution to the settlement to Evolve. On the brink of the hearing on the motions to enforce, but too late to cancel it, Mr. Ponte acknowledged his promises and agreed to perform. The hearing was held on February 25, 2015, and the motions to enforce were granted by text order following the hearing.

Mr. Abdullah's motion to enforce the settlement (ECF No. 21) included a prayer for an award of the attorneys' fees and costs that he incurred in connection with the motion to enforce.[1] Following argument on whether fees and costs should be awarded during the hearing on the motions to enforce, the Court directed Mr. Abdullah to file this motion for attorneys' fees and costs, together with a bill of costs. ECF No. 33. It has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Finding that no further hearing is necessary,[3] I recommend that Mr. Abdullah's motion be granted and that the Court award him attorneys' fees and costs in the total amount of $5775.90 to be paid jointly and severally by Mr. Ponte and his attorney.

---

[1] Evolve's motion to enforce the settlement did not include a request for attorneys' fees and it has not joined Mr. Abdullah's motion for attorneys' fees and costs. ECF No. 27.

[2] Motions of this kind are sometimes referred for determination pursuant to 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). In this Circuit, such motions are generally considered nondispositive under the Federal Magistrates Act unless they seek a sanction that fully disposes of a claim or defense. Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999); Berry v. Worldwide Language Res., Inc., No. 08–438, 2010 WL 5027211, at *1 (D. Me. Dec. 3, 2010) (magistrate judge's order denying sanctions reviewed for whether order is "clearly erroneous [or] contrary to law"); Sheppard v. River Valley Fitness One, L.P., No. 00-111, 2004 WL 102493, at *5 (D.N.H. Jan. 22, 2004) (motions for sanctions are generally treated as nondispositive), modified on other grounds, 428 F.3d 1 (1st Cir. 2005); see Cleversafe, Inc. v. Amplidata, Inc., 287 F.R.D. 424 (N.D. Ill. 2012) (circuit-by-circuit analysis of treatment of sanctions motions referred to magistrate judges). This post-judgment motion is not focused on the claims, which have already been dismissed with prejudice; accordingly, it could be considered nondispositive and determined in the first instance by a magistrate judge. Heghmann v. Fermanian, No. 99-336, 2000 WL 1742122, at *1 n.3 (D. Me. Nov. 27, 2000) (post-judgment motion for sanctions focused on pretrial conduct appropriate for magistrate judge to hear and determine); Pan Am. Grain Mfg. Co. v. P.R. Ports Auth., 193 F.R.D. 26, 31 (D.P.R. 2000) (award of attorneys' fees after bench trial pursuant to inherent authority is not a case-dispositive sanction). Because the motion was referred for report and recommendation, I will submit proposed findings of fact and recommendations of law to the District Court. Cf. U.S. ex rel. Ne. Concrete Prods., LLC v. M.A. Mortenson Co., No. 05–135, 2006 WL 696196, at *1 n.1 (D. Me. Mar.15, 2006) (magistrate judge decides post-dismissal sanctions motion under Rule 11 as a recommendation in an abundance of caution in light of circuit split over how to proceed); Plante v. Fleet Nat'l Bank, 978 F. Supp. 59, 64-65 (D.R.I. 1997) (post-dismissal Rule 11 sanctions motion decided de novo because magistrate judge presented report and recommendation and neither party objected; court does not need to decide whether de novo review appropriate). The District Court, of course, can apply the appropriate level of review in the event either side objects.

[3] Neither party requested oral argument or an evidentiary hearing pursuant to the applicable Local Rule. DRI LR Cv 7(3).

I.  **BACKGROUND**

This litigation arose from an employment dispute between Mr. Abdullah and his alleged former employer, Evolve, a mortgage lending company, and Mr. Ponte, the branch manager of Evolve's Rhode Island office.[4] Evolve had hired Mr. Ponte as its branch manager to open up a Rhode Island office. Mr. Abdullah claimed that Mr. Ponte, allegedly acting for Evolve, hired him as a loan officer and that he worked at Evolve's Rhode Island office from September until November 2013. As a result of Mr. Ponte's racial and sexual harassment, including vulgar and derogatory comments, Mr. Abdullah claimed that he was constructively discharged. Mr. Abdullah's complaint asserted claims against both Mr. Ponte and Evolve under federal and Rhode Island law.

At the request of the parties, on July 22, 2014, this Court issued a Notice of Settlement Conference and Settlement Conference Order (ECF No. 17) directing Mr. Abdullah, Evolve and Mr. Ponte to participate in court-annexed mediation. The Notice advised the parties that "[a]ny failure of the trial attorneys, parties or persons with authority to attend the conference may result in sanctions to include the fees and costs expended by the other parties in preparing for attending the conference." ECF No. 17. The mediation was commenced at a session held on August 25, 2014; at the termination of the first session, the parties agreed to continue the mediation after an exchange of relevant documents and information. During the ensuing discovery period, Mr. Ponte advised Evolve that he intended to bring a cross-claim against it for unpaid compensation. ECF No. 27-1.

On October 23, 2014, I presided over the second session of the mediation. Based on the discussions at the first session and Mr. Ponte's threat of a claim against Evolve, the negotiations

---

[4] This description of the claims at issue in the case is drawn from the complaint, the answers and Plaintiff's Rule 16 Conference Statement. See generally ECF Nos. 1, 3, 12, 14.

3

were bifurcated; as mediator, I worked first on settling the dispute between Mr. Ponte and Evolve and then focused on resolving the dispute between Mr. Abdullah and Evolve (with Evolve taking responsibility for settling on behalf of Mr. Ponte). In my presence, Mr. Ponte agreed to mutual release of all claims between him and Evolve in consideration of payment by him of $12,000 to Evolve, and contingent on Evolve reaching a "global" agreement with Mr. Abdullah, so that all claims against both Mr. Ponte and Evolve would be dismissed with prejudice. Put differently, Mr. Ponte's contribution to the settlement was $12,000 plus his commitment to release all of his claims against Evolve, in consideration for which Evolve agreed to take on the entire liability to Mr. Abdullah for both itself and Mr. Ponte. To ensure Mr. Ponte's performance of his promise, I directed, with his agreement, that he promptly deliver $12,000 to his attorney, who was to hold the money in his client account until Evolve was able to conclude the settlement with Mr. Abdullah and the settlement documents were prepared and executed. To ensure compliance with this requirement, I also directed Mr. Ponte's attorney to confirm receipt of the funds in an email communication to the Court and to Evolve's counsel. Based on Mr. Ponte's agreement to settle, I permitted him and his attorney to leave the court-ordered mediation session, while Mr. Abdullah and Evolve remained and continued to negotiate. Later in the same day, they also concluded a binding agreement to settle.[5]

---

[5] Because Mr. Abdullah and Evolve have not put the terms of their agreement in issue, they remain confidential in accordance with this Court's ADR Plan; similarly, Mr. Ponte's mediation communications that are not material either to the motions to enforce or to this motion for attorneys' fees and costs remain confidential. See United States District of Rhode Island Alternative Dispute Resolution Plan § VIII at 6 (Am. Mar. 1, 2006) (http://www rid.uscourts.gov/menu/generalinformation/adr/ADRPlan-030106.pdf ). To avoid manifest injustice, confidentiality no longer protects such of the content of Mr. Ponte's mediation communications and such of the terms of his agreement to settle as are necessary to this Court's determination of these motions. In re Anonymous, 283 F.3d 627, 640 (4th Cir. 2002) (mediator may disclose confidential information when mandated by manifest injustice, indispensable to resolution of an important subsequent dispute, and not going to damage mediation program); see F.D.I.C. v. White, 76 F. Supp. 2d 736, 738 (N.D. Tex. 1999) (Alternative Dispute Resolution Act of 1998, 28 U.S.C. § 652(d), does not create evidentiary privilege to preclude litigant from challenging validity of settlement agreement based on events that transpired at mediation); see also 1 Sarah R. Cole et al., 1 Mediation: Law, Policy, Practice § 8:25 (2014) (usual principle that mediation is confidential does not apply when court must address disagreement regarding validity of mediated agreement or claims of professional misconduct in conducting

4

Five days later (on October 28, 2014), consistent with the Court's directive, Mr. Ponte's attorney sent an electronically signed email both to the Court and to the attorney for Evolve, advising that Mr. Ponte had delivered the $12,000, which "reflects Mr. Ponte's previously agreed-upon contribution to the global settlement of the instant litigation." ECF No. 27-3. More importantly, this email crisply and clearly confirmed the essential terms of the settlement to which Mr. Ponte had agreed, stating that the $12,000 would be held until "receipt of a fully-executed Mutual General Release by and between Mr. Ponte and Evolve Bank & Trust, as well as a General Release executed by Mr. Abdullah in favor of Mr. Ponte, as well as a Dismissal Stipulation, with prejudice, to be signed by all parties hereto." Id. Mr. Ponte was a copy recipient on this email.

Over the next three weeks, the parties circulated drafts of the settlement documents; by November, they were substantially finalized. On November 26, 2014, Mr. Ponte, by an email electronically signed by his attorney of record (with Mr. Ponte as a copy recipient), sent Evolve confirmation that the pending draft of the Mutual General Release that released all claims between Evolve and Mr. Ponte, was "consistent with the parties' agreement to amicably resolve the instant litigation;" Mr. Ponte's counsel requested a clean copy for execution. ECF No. 27-9 at 2. As of this date, the previously agreed-upon settlement was ripe for expeditious implementation.

---

mediation; confidentiality also does not protect communications that constitute record of agreement and should be lifted to avoid manifest injustice); Maureen A. Weston, Checks on Participant Conduct in Compulsory ADR: Reconciling the Tension in the Need for Good-Faith Participation, Autonomy, and Confidentiality, 76 Ind. L.J. 591, 637 n.225 n.10 (2001) (same); cf. 5 U.S.C. § 574(a)(4) (Administrative Dispute Resolution Act of 1996 permits disclosure of confidential communication made to mediator to "prevent a manifest injustice"). It must be noted that the mere making of a motion to enforce does not justify disclosure of the confidential communications made during the mediation; in this case, the movants appropriately disclosed only such information as was necessary to the issue presented; they were circumspect in disclosing additional information only as required to rebut Mr. Ponte's disingenuous assertions.

In response, on December 10, 2014, counsel for Evolve emailed Mr. Ponte's counsel copies of the settlement documents already signed by Evolve and Mr. Abdullah. ECF No. 27-10. Evolve's attorney quickly detected trouble brewing as Mr. Ponte's attorney became non-responsive to inquiries about executing the documents and tendering the funds. ECF No. 38-1 ¶ 6. Finally, on December 16, 2014, Evolve reached Mr. Ponte's attorney, who advised that his client was refusing to sign the documents or to authorize his counsel to tender the funds but instead was demanding that Evolve pay him an additional incentive to induce him to do so. ECF No. 38-1 ¶ 16. Mr. Ponte's counsel explained to Evolve's lawyer that it was "too bad that the parties did not have something in writing;" when asked why Mr. Ponte was now seeking more money from Evolve, his attorney responded that Mr. Ponte was angry that Mr. Abdullah's counsel had recently served him with process in unrelated lawsuits. ECF No. 38-1 ¶¶ 14, 17-18. Evolve refused to renegotiate, insisting that Mr. Ponte must abide by the settlement as agreed by the parties. ECF No. 38-1 ¶ 17. Despite the parties' continued work to hold the settlement together, it became clear that Mr. Ponte would not sign or authorize release of the $12,000 unless Evolve paid him more. ECF No. 38-1 ¶ 23.

On January 6, 2015, Mr. Abdullah filed his motion to enforce the settlement. ECF No. 21. Evolve's motion to enforce followed on February 4, 2015. ECF No. 27. In opposition to both motions, Mr. Ponte, in a filing signed by his counsel, asserted – falsely – that he had not agreed to settle his claims against Evolve, but rather had agreed only to resolve Mr. Abdullah's claims: "Ponte's lone contention is that the [settlement] should not foreclose his ability to pursue appropriate legal action as may be available to him as against Evolve." ECF No. 31. After both motions were referred to me for determination, I set them down for hearing. Mr. Ponte tried to postpone the hearing. ECF No. 28. He did not succeed; instead of the requested delay of a

week, a twenty-four hour continuance was granted. The hearing was set for 2:00 p.m. on February 25, 2015.

What followed was, idiomatically, a sorry case of "a day late and a dollar short." On the morning of the hearing, Mr. Ponte's attorney, dealing with the lawyer for Evolve, advised that his client – at last – was prepared to execute the documents and authorize payment. With the consent of Mr. Abdullah's counsel, Evolve agreed that, if the fully executed documents and a check for $12,000 were delivered by noon, the motions to enforce would be withdrawn. However, having pushed the matter right to the brink, Mr. Ponte was unable to pull it back in time. Due to claimed illness, his attorney was not in a position to deliver executed documents until 1:20 p.m., missing the noon deadline by one hour and twenty minutes. By the time the other parties received the email advising that Mr. Ponte had signed the documents and the check was ready to tender, it was too late; the lawyers for Evolve and Mr. Abdullah were already on their way to Court prepared to proceed with the scheduled hearing.[6]

At the hearing, the Court directed Mr. Ponte's counsel to deliver the fully executed documents and the check for $12,000 to Evolve and directed Evolve's counsel to file the stipulation of dismissal with prejudice, all of which was promptly accomplished. Following argument on Mr. Abdullah's prayer in his motion to enforce for recovery of the attorneys' fees and costs incurred in connection with the motion to enforce, and making clear that the Court would retain jurisdiction to decide whether to award attorneys' fees and costs, the Court directed Mr. Abdullah to file this motion with supporting documentation in seven days, and gave Mr. Ponte an opportunity to respond seven days following receipt of the motion. On February 27, 2015, the Court entered a text order granting the two motions to enforce the settlement

---

[6] By that time, this Court had also invested a significant effort in preparation for the hearing.

agreement. The stipulation of dismissal with prejudice (ECF No. 32) was filed the same day; it was entered by this Court on March 5, 2015.

This motion for attorneys' fees and costs was timely filed and objected to; it is now ripe for decision.

## II. FINDINGS AND ANALYSIS

Mr. Abdullah asks this Court to award him all of the attorneys' fees and costs that he incurred in connection with enforcing the settlement agreement based on its inherent power and pursuant to 28 U.S.C. § 1927. As grounds for this request, he contends that Mr. Ponte's repudiation of a crisp and clear agreement to settle for the purpose of imposing new terms (more money) on Evolve and of wreaking vengeance on Mr. Abdullah's attorney constitutes bad faith entitling him to recover the unnecessary expenses caused by the resulting delay.

This Court has the inherent power to award attorneys' fees against a litigant who "has acted in bad faith" or "vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Mullane v. Chambers, 333 F.3d 322, 337 (1st Cir. 2003). In determining whether sanctions are appropriate, the court must consider "the presence or absence of any bad faith or obdurate conduct on the part of either party, or any unjust hardship that a grant or denial of fee-shifting might impose." Farone v. Sciarretta, 131 F.R.D. 29, 20 (D.R.I. 1990). Bad faith includes delay or disruption of the litigation. Sanchez v. Esso Standard Oil de P.R., Inc., Civil No. 08-2151 (JAF), 2010 WL 3809990, at *18 (D.P.R. Sept. 29, 2010). Section 1927 similarly permits a fee award to be imposed on "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Whether the court is exercising its inherent power over both the party and counsel or its statutory

power over counsel, "[i]t is beyond serious dispute" that a federal court possesses the power to shift attorneys' fees when parties or their attorneys conduct litigation in bad faith. Pan Am. Grain Mfg. Co. v. P.R. Ports Auth., 295 F.3d 108, 117 (1st Cir. 2002); see Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66 (1980) (recognizing bad faith exception to general rule that federal courts cannot ordinarily make fee-shifting awards); Stefan v. Laurenitis, 889 F.2d 363, 370 (1st Cir. 1989) (discussing district court's inherent power under Roadway doctrine).

The court's power to award fees for unnecessary expenses caused by another litigant's bad faith applies to bad faith conduct in connection with court-annexed mediation as to any other phase of the litigation. Spoth v. M/Y SANDI BEACHES, No. 09-CV-00647S(F), 2010 WL 2710525, at *4-6 (W.D.N.Y. July 7, 2010) (court may award attorneys' fees based on its inherent powers and on 28 U.S.C. § 1927 for actions taken in bad faith in connection with mediation in violation of court's ADR Plan). Premised on the principle that "[t]he solemnity with which the federal courts approach settlement agreements cannot be overstated," Silicon Image, Inc., v. Genesis Microchip, Inc., 271 F. Supp. 2d 840, 846 (E.D. Va. 2003) (enforcing settlement agreement), federal courts treat settlement agreements as "solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out." Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1976). The District of Rhode Island is no exception in encouraging "mutually satisfactory resolution of disputes . . . to make more efficient use of judicial and private resources." United States District of Rhode Island Alternative Dispute Resolution Plan § I at 3 (Am. Mar. 1, 2006) (http://www.rid.uscourts.gov/menu/generalinformation/adr/ADRPlan-030106.pdf) ("ADR Plan"). Adopted pursuant to the Alternative Dispute Resolution Act of 1998, 28 U.S.C. § 651, *et seq.*, this Court's ADR Plan specifically requires that both the parties

and counsel of record participating in court-annexed mediation must "attend . . . and participate in good faith." ADR Plan § VII (E) at 6. The Plan makes clear that "[f]ailure to meet obligations under these rules may lead to disciplinary action." Id.

When a litigant's bad faith or vexatious conduct delays the consummation of a crisp and unambiguous settlement agreement, attorneys' fees and costs are appropriate to be awarded to any party injured by the delay. Tocci v. Antioch Univ., 967 F. Supp. 2d 1176, 1202 (S.D. Ohio 2013). In Tocci, the court found that the parties had entered a settlement agreement whose terms were certain and clear at a mediation conducted by a magistrate judge. Id. at 1196-1201. When the plaintiff attempted to repudiate the terms of the agreement, causing the defendant to expend additional resources to enforce it, the court awarded fees and costs "for the work performed by its attorneys in response to [the] bad faith conduct." Id. at 1203. In so doing, the court invoked its inherent power to regulate the conduct of attorneys and parties and emphasized the importance of a finding of bad faith as a justification. Id. at 1201-02. It held that, for fees to be awarded, the circumstances must involve more than just a disagreement over whether a settlement occurred. Id. at 1202. However, when the repudiation is linked to "post-settlement attempts to impose new terms" on the other party, the resulting delay amounts to the level of vexatiousness and bad faith that entitles the party harmed to an award of attorneys' fees and costs. Id. at 1202-04; see Jaynes v. Austin, 20 F. App'x 421, 423, 427 (6th Cir. 2001) (per curiam) (when party to settlement attempted to impose new term, court may find bad faith and exercise its inherent powers to award attorneys' fees). On the other hand, when the recalcitrance to consummate the settlement is grounded in a genuine misunderstanding or real confusion about the terms or the process, the settlement should be enforced, but the court should not find bad faith or award fees. Williams v. Winona Manor Healthcare, LLC, No. 4:13CV225-SAA, 2014

10

WL 5090620, at *4 (N.D. Miss. Oct. 9, 2014) (court grants motion to enforce settlement agreement but does not award attorneys' fees because written agreement had terms less favorable to plaintiff than the on-the-record recitation of terms at end of mediation); Devoux v. Wise, No. 3:12-cv-540-J-34JBT, 2014 WL 1457520, at *9 (M.D. Fla. Apr. 14, 2014) (court grants motion to enforce settlement but does not award attorneys' fees because plaintiff was *pro se* and did not understand mediation process).

When focusing on the conduct of counsel in connection with settlements, our sister court in the District of Massachusetts has found that even merely lackadaisical conduct can be tantamount to bad faith when it arises from the failure of counsel to take seriously his announcement to the court that the case has settled. Pratt v. Philbrook, 174 F.R.D. 230, 236-37 (D. Mass. 1997) ("If court-assisted settlement efforts are to work, the court must be confident that counsel will take seriously their announcement to the court that the case has been settled") (citing Pratt v. Philbrook, 109 F.3d 18, 20 n.4 (1st Cir. 1997)). In Pratt, while emphasizing that "I do not accuse plaintiff's counsel of subjective bad faith," Judge Ponsor found that the attorney's incantations of diligence in his attention to the settlement process amounted to "distortion and exaggerations" justifying the finding of bad faith. 174 F.R.D. at 237; see also Fusco v. Medeiros, 965 F. Supp. 230, 255 (D.R.I. 1996) (28 U.S.C. § 1927 does not require a finding of subjective bad faith to impose sanctions; counsel acts unreasonably and vexatiously when he acts in substantial disregard of duty owed to court). Moreover, at least one court has held that § 1927 liability attaches when an attorney makes a materially misleading statement that impacts the proceeding, knowing that its genesis is his client's inappropriate ill-will directed at the opposing side. See Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1323-34,

1327, 1332 (S.D. Fla. 2007) (attorney knew defendant had "serious bad blood" towards plaintiff; defendant procured false affidavit, on which attorney recklessly relied).

The application of these principles to this case begins with the proposed finding that the terms of Mr. Ponte's agreement to settle were both certain and clear – this finding is based not only on the communications in my presence during the mediation and the two emails, electronically signed by Mr. Ponte's attorney of record that confirm the agreement,[7] but also on Mr. Ponte's ultimate acquiescence to the settlement once it became clear that his attempts to coerce Evolve to pay him more had failed and the moment for the hearing on the motion to enforce had arrived. I further find by clear and convincing evidence[8] that Mr. Ponte's conduct plainly amounted to bad faith engaged in "vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46. Specifically, based on the affidavit of Evolve's counsel (ECF No. 38-1), I find that Mr. Ponte intentionally delayed implementation of the settlement for the purpose of extracting more money from Evolve and to avenge himself on Mr. Abdullah's counsel. See Tocci, 967 F. Supp. 2d at 1202-04 (delay to impose new terms on opposing party is

---

[7] While an oral agreement to settle is enforceable in a case pending in federal court subject to any applicable statute of frauds, Advanced Voice Commc'ns, Inc. v. Gain, No. C.A. 09-56ML, 2010 WL 677459, at *3-4 (D.R.I. Feb. 25, 2010), this case did not present the challenges inherent in enforcement of a disputed agreement where there is no writing signed by the person to be bound. The emails sent by Mr. Ponte's counsel of record (ECF Nos. 27-3, 27-9) unambiguously amount to such a writing. See R.I. Gen. Laws § 42-127.1-2(8) (electronic signature occurs when person intends to sign the record), § 42-127.1-9(a) (electronic record or electronic signature is attributable to person as act of person). Even without those writings, because this case involved federal claims, and there is no federal statute of frauds, an oral agreement to settle would have been enforceable. Eswarappa v. Shed Inc./Kid's Club, 685 F. Supp. 2d 229, 234-35 (D. Mass. 2010) (oral agreement to settle enforceable in case involving federal discrimination laws).

[8] The cases awarding attorneys' fees and costs for bad faith in connection with mediation do not discuss the movant's burden of proof, although sanctions based on fraud on the court must be shown by clear and convincing evidence. Phinney v. Paulshock, 181 F.R.D. 185, 197-200 (D.N.H. 1998), aff'd sub nom., Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); cf. Rd. & Highway Builders, LLC v. United States, 702 F.3d 1365, 1368 (Fed. Cir. 2012) (government officials presumed to negotiate settlement in good faith unless there is clear and convincing evidence to the contrary); Wash. Int'l Ins. Co. v. Ashton Agency, Inc., No. 10-CV-526-LM, 2013 WL 1910289, at *1 (D.N.H. May 8, 2013) ("party seeking attorney's fees bears the burden of establishing its opponent's bad-faith conduct by clear and convincing evidence"); Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 80 (D.D.C. 2009) (same). This case does not pose the challenge of taking this analysis deeper because the evidence of bad faith conduct committed by Mr. Ponte and his attorney readily clears the "clear and convincing" hurdle.

12

bad faith). In addition, I find that Mr. Ponte's attorney's conduct in perpetuating the delay (making filings that distorted the facts by denying the existence of an agreement with Evolve) is tantamount to bad faith. Pratt, 174 F.R.D. at 236-37 (counsel's distortions in filings related to settlement amount to bad faith). Material to the finding of bad faith by counsel is that these filings were made knowing that the genesis of Mr. Ponte's instruction was not only his desire to renege so he could sweeten the deal, but also his desire for revenge on Mr. Abdullah's attorney. See ECF No. 38-1 ¶¶ 16-18; Bernal, 479 F. Supp. 2d at 1323-34, 1327, 1332. Finally, I find that the intentional delay caused by the vexatious and bad faith conduct of Mr. Ponte and his attorney imposed additional and otherwise unnecessary expenses on Mr. Abdullah. The fact that Mr. Ponte's last minute change of heart would have resulted in Mr. Abdullah's withdrawal of his motion to enforce, if Mr. Ponte had managed to get it implemented in time to save the parties the expense of coming to court for the hearing, is beside the point. Having protracted his bad faith conduct right to the brink, Mr. Ponte must bear the consequences – the hearing was held, inflicting further expenses on the parties and consuming this Court's scarce resources.

To establish the amount of the unnecessary fees and costs inflicted on him, Mr. Abdullah appropriately buttressed his motion with detailed time records presented under oath, supported by an affidavit from an experienced local practitioner regarding the reasonableness of the requested rates. ECF No. 33-2 to 33-4. In compliance with the Court's directive, Mr. Abdullah presented his fees incurred from October 28, 2014; however, Mr. Ponte correctly points out that the work done prior to his repudiation should not be awarded because it was necessitated by the agreement to settle and not by his bad faith.[9] It was not until December 10, 2014, that counsel

---

[9] Mr. Ponte stretches this point a bit too far, arguing that only fees and costs expended after January 6, 2015, related directly to the motion to enforce. I find that the fees and costs expended by Mr. Abdullah after December 10, 2014, were occasioned by the delay, including the time invested as the problem with implementation of the settlement

13

for Evolve provided Mr. Ponte's counsel with copies of the settlement agreement signed by Evolve and Mr. Abdullah, and Mr. Ponte went dead in the water and then tried to change the deal. Based on my finding that Mr. Ponte's misconduct did not affect the other parties until after December 10, 2014, and based on my review of Mr. Abdullah's attorney's detailed time entries, I find that they establish that a total of $5081 in attorneys' fees and $194.90 in costs should be awarded; I further find that an additional award of fees in the amount of $500 should be added in recognition that Mr. Abdullah incurred additional expenses in complying with my order that he file this motion for attorneys' fees and costs supported by appropriate documentation. See United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008) (after basic fee award is calculated, court may adjust it up or down to reflect other considerations); Bobe-Muniz v. Caribbean Rests., Inc., 76 F. Supp. 2d 171, 177 (D.P.R. 1999) (court's role is to ensure that a fee award overall is justified and amount of award comes within realm of reasonableness).

Based on the finding that both Mr. Ponte and his attorney are guilty of bad faith, as to both of them pursuant to the Court's inherent power, and as to counsel, pursuant to 28 U.S.C. § 1927, I recommend that this Court award to Mr. Abdullah $5,581 in attorneys' fees and $194.90 in costs, for a total of $5,775.90, and order that responsibility for payment of these fees and costs rest jointly and severally on both Mr. Ponte and counsel. See Galanis v. Szulik, 841 F. Supp. 2d 456, 462 (D. Mass. 2011) (sanction imposed on plaintiff and his counsel), adhered to on reconsideration, 863 F. Supp. 2d 123 (D. Mass. 2012); Stalley v. Mountain States Health Alliance, No. 2:06- CV-217, 2010 WL 446929, at *3 (E.D. Tenn. Feb. 2, 2010) (same); see also Niemeyer v. Store Kraft Mfg. Co., No. 4:12CV3014, 2012 WL 2576400, at *6 (D. Neb. July 3,

---

began to crystalize, followed by the research, drafting and filing of the motion to enforce, and attendance at the hearing.

2012) (party and attorney sanctioned jointly and severally pursuant to inherent power, attorney sanctioned in the alternative pursuant to 28 U.S.C. § 1927).

### III. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's motion for attorneys' fees and costs (ECF No. 33) be GRANTED. I further recommend that Defendant John Ponte and his attorney, jointly and severally, be ordered to pay to Mr. Abdullah a total of $5775.90 within ten day of the District Court's ruling on this report and recommendation.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 27, 2015